## William E. Donnell & others *vs.* The Starlight.

The courts of the Commonwealth have jurisdiction to enforce a lien, under the Gen. Sts. *c.* 151, for repairs done to a vessel lying in a port of the Commonwealth, if the general owner, who has the exclusive possession and control of her, resides in such port, although she has been registered in the port of another state in the name, as owner, of a person there residing, to whom the builder's certificate has been made, but whose real interest in her is that of mortgagee.

The order of notice on a petition under the Gen. Sts. *c.* 151, to enforce a lien on a vessel, may be made returnable at the same term of the court at which the petition has been filed.

The order of notice on a petition to the superior court, under the Gen. Sts. *c.* 151, to enforce a lien on a vessel, may be issued after the attachment at any time before the hearing; and it is within the discretion of the court to allow it to be served on respondents out of the state by handing to them attested copies of the petition and order.

Labor and materials furnished in the alteration of a vessel to fit her for new uses are furnished in her "construction and repairs" within the meaning of the Gen. Sts. *c.* 151, § 12, giving materialmen a lien.

A mortgage on a vessel is postponed to the lien given to materialmen by the Gen. Sts. *c.* 151, § 12.

PETITION to enforce a lien for labor and materials expended on the steamer Starlight. Trial at April term 1868 of the superior court, before *Dewey,* J., who reported the case for the determination of this court, substantially as follows :

The Starlight was built in Maine in 1866, for Charles Spear, then and ever since a resident of Boston ; and on July 1 of that year was launched and given into his possession ; but, to secure liabilities incurred on behalf of Spear by Benjamin T. Manson and Edward K. Harding, both residents of Maine, the builder's certificate was made to them, and the steamer was registered in their names as owners at the port of Bath in Maine, with intent to be held by them as collateral security only. Spear ran the steamer on a river in Maine until September or October 1866, when he brought her, without any knowledge or consent on the part of Manson or Harding except such as may be implied from the relations of the parties to the steamer, to Boston ; and while there, in February, March and April 1867, without the knowledge of either Manson or Harding, ordered the labor and materials, for which a lien was claimed by the petitioners, to be expended on her, and had the exclusive possession and the control and direction of the steamer, as general owner, from the time she was launched till May 27, 1867, when Manson and Harding took possession of her as she was lying at the wharf in Boston, and kept possession of her there until she was attached on this petition in February 1868.

The petition was filed in the clerk's office of the superior court on February 17, 1868, and, on the same day, the clerk made out a writ directed to the sheriffs and their deputies, and commanding them to attach the steamer, with her tackle, apparel, and furniture, and to summon Spear, Manson and Harding to appear before the superior court on the third Monday of the ensuing March to answer unto the petition. On this writ the steamer was attached, and subsequently Spear and Manson were summoned, " by delivering to them an attested copy of this petition and order of court," to appear and answer. At the time of filing the petition the superior court was sitting for the January term, and it remained in session for that term till after

the return day of the writ. On July 2, 1868, Manson and Harding gave a bond to discharge the attachment.

When the case came on for trial in the superior court at October term 1868, the court ruled that the process to summon the respondents was defective, but granted leave to take out a new order of notice, ordering the petitioners to give notice to Spear, Manson and Harding to appear at January term of the superior court " by serving them with a true and attested copy of said petition with this order thereon " fourteen days at least before the first day of said term, " and said order is without prejudice to the former order and attachment." Spear, Manson and Harding were all out of the Commonwealth at the time, and the orders were served on them in other states by officers of those states authorized to serve process therein.

" The work done on the steamer" by the petitioners " consisted in enlarging or extending the promenade deck, taking off and replacing the hurricane deck, and sheathing inside, and other items, the whole or a considerable part of which was done in order to adapt the steamer to new uses and service."

The respondents Manson and Harding contended " that the court had no jurisdiction, because, this being a proceeding *in rem*, the attachment was illegal, the same being on a writ or process illegally issued, and made returnable at a time not authorized by law; and also because the subject matter of the petition was within the maritime jurisdiction of the courts of the United States, and the jurisdiction of said courts was exclusive on the facts; that this objection was not cured by the bond given to dissolve the attachment; that the matters sued for were not such as the statute provided a lien for, the same being alterations, and not repairs, construction, &c., as provided in the statute; that the original processes were illegally issued and served, and were made returnable at a time unauthorized by law; and, as no other attachment had been made than the one originally made, that the vessel was not in the custody of he law, being held neither by the attachment nor the bond, and there was nothing upon which to found any order or decree of court; that the service made of the order of notice, issued at

October term 1868, was illegal; and that, if all the proceedings had been regular and legal, the respondents' claim had priority over that of the petitioners.

"If any of these objections are regarded by the court as tenable, and fatal to the petitioners' right to maintain their suit, even with such amendments, if any, as might be asked for and allowed, judgment is to be rendered for the respondents, otherwise for the petitioners."

*A. Churchill*, for the petitioners.

*H. G. Hutchins*, for the respondents Manson and Harding.

Morton, J. Several questions arise in this case. 1. The respondents Manson and Harding contend that the superior court has no jurisdiction of the case, because the subject matter of the petition is within the exclusive maritime jurisdiction of the courts of the United States. It is settled by the authorities, that the courts of a state have jurisdiction to enforce liens, created by its laws, for labor and materials furnished in constructing or repairing domestic vessels. Gen. Sts. *c.* 151. *Maguire* v. *Card*, 21 How. 248, 250. *The Belfast*, 7 Wallace, 624. *McMonagle* v. *Nolan*, 98 Mass. 320. *Foster* v. *The Richard Busteed*, 100 Mass. 409. If the steamer Starlight then was in her home port, the lien of the plaintiffs can be enforced in the superior court. The steamer was registered at the port of Bath in the name of Manson and Harding as owners; but the facts show that their real interest in her was that of mortgagees. Spear was the mortgagor and general owner, and as such had the exclusive possession and control of her until after these liens had attached. The facts, that the builder's certificate was made to them, and that the ship was registered in their name, are not conclusive proof of ownership. In *Howard* v. *Odell*, 1 Allen, 85, and *Blanchard* v. *Fearing*, 4 Allen, 118, the defendants were allowed to defend against a claim for supplies furnished the ship, by showing that they were in fact mortgagees, and not owners, although they had an absolute bill of sale and the registry was in their names. Spear was the owner of the steamer · he resided in Boston; she was in Boston under his sole direction; and under these circumstances we are of opinion that the

residence of her owner determines the home port of the vessel, and that under the statutes the superior court has jurisdiction. *White's Bank* v. *Smith,* 7 Wallace, 646. *Weaver* v. *The S. G. Owens,* 1 Wallace, Jr. 359. *Hill* v. *The Golden Gate,* 1 Newberry, 308.

2. The respondents also contend that the superior court has no jurisdiction, because the attachment was illegal, being in a process illegally issued and made returnable at a time not authorized by law. The fifteenth section of chapter 151 of the General Statutes provides two modes in which proceedings to enforce a lien may be commenced : " The petition may be entered in court or filed in the clerk's office in vacation, or it may be inserted in a writ of original summons, with an order of attachment, and served, returned and entered as other civil actions." When the first mode is adopted, the same section provides that " at the time of entering or filing the petition a process of attachment against such ship or vessel, her tackle, apparel and furniture, shall issue," and the subsequent proceedings shall be " as prescribed in chapter 150 for enforcing liens on buildings and land, so far as the same are applicable." Section 14 of chapter 150 provides that " the court in which the petition is entered, shall order notice to be given to the owner of the building or structure, that he may appear and answer thereto at a certain day in the same term, or at the next term, by serving him with an attested copy of the petition, with the order of the court thereon, fourteen days at least before the time assigned for the hearing."

The petitioners in this case adopted the first mode above named of commencing their proceedings. They entered their petition in court during a term thereof, and took out a process of attachment, which was duly served by a seizure of the vessel. Thereupon the court acquired jurisdiction of the vessel and of the case. After the entry of the petition, the court may order notice to be given to the owner in the same order directing the attachment, as was done in this case; or may order such notice at any future time before the hearing upon the merits takes place, and such order may be returnable at a certain day in a

pending term, or at the next term. *Rockwood* v. *Walcott,* 3 Allen, 458. The fact, therefore, that the order issued in this case was made returnable at a day in the same term, and not at the next term, is not a ground of objection to it. The fallacy in the respondents' argument upon this point consists in assuming that the petition was inserted in a writ of original summons, which could only be made returnable at a regular term. But if the order of notice had been defective in all the particulars claimed by the respondents, it would be immaterial. It was not necessary, to give the court jurisdiction, that any order of notice to the owner should have been inserted in the process of attachment; if the petition was duly entered and the process of attachment duly issued and served, the jurisdiction attached, and would not be defeated by any insufficiency of the notice. The court has full power at any time before the hearing to order such notice to the owner as shall be deemed proper and effectual. Gen. Sts. *c.* 150, §§ 15, 16. In this case the superior court did, at October term 1868, order a new notice to the respondents, which was duly served upon them. This cured any defects in the original notice, and could not have the effect to oust the court of jurisdiction.

The objection that this new order was not legally served cannot prevail. The respondents being absent, the court had power to order such notice as under the circumstances of the case was considered most proper and effectual; the sufficiency of the notice was for the decision of the superior court, within its discretion, and is not open to exception. Gen. Sts. *c.* 150, § 15.

3. We have no doubt that the labor and materials, for which the petitioners claim their liens, were furnished in the " construction or repairs " of the steamer, within the meaning of the Gen. Sts, *c.* 151, § 12. *The Ferax,* 1 Sprague, 180.

4. One other question is raised by the report. The respondents claim that, being in law mortgagees, their mortgage has priority of the plaintiffs' lien. If these respondents can be considered as standing in the same position as parties having a conveyance in mortgage duly recorded, we are of opinion that their claim would not have preference of the lien. This point was decided

in *The Granite State*, 1 Sprague, 277, in which it was held that a lien for supplies and repairs has preference of a prior mortgage, and such lien was enforced after the mortgagee had taken possession. We see no reason to doubt the correctness of this decision. The statute provides that the "lien shall be preferred to all others thereon except mariners' wages." Gen. Sts. *c.* 151, § 12. The labor and materials furnished increase the value of the mortgagee's security, and inure to his benefit. The manifest purpose of the statute is, to give to laborers and materialmen an interest in the vessel to the extent to which they have added to its value, which has precedence of all other liens and incumbrances except mariners' wages.

*Judgment for the petitioners.*