## DANIEL QUIMBY v. L. D. HAZEN.

*Statutory Lien on Logs. Act of* 1878 *No.* 53, (*R. L. s.* 1988,) *giving lien on Logs, in part Unconstitutional. Bill of Rights, Article I. Law of the Land.*

1. The statute gives the lien to the person who *actually cuts or hauls the logs;* and it is enforcable by him.
2. The statute, so far as it allows a lien in favor of a sub-contractor against the owner of the lumber, who was not a party to the contract for cutting or drawing, is unconstitutional, on the ground that it is really taking one man's prop-

erty to pay the debt of another, and, without notice, hearing, or adjudication, so far as any of the proceedings relate to such owner.

3. Distinction between statutory and common-law liens.

4. The words, "law of the land," as used in our constitutions, defined.

5. Act of 1878, No. 53, (R. L. s. 1988-9) lien on logs,—construed.

HEARD at the June Term, 1881, Caledonia County, Ross, J., presiding.  Action, trespass *de bonis*, and trover joined ; referred, and heard on the report of referee.  Judgment, *pro forma*, for the plaintiff to recover $91.52.  The referee found :

Hazen, during 1880 and 1881, was engaged in the lumber business in Victory as well as in some other places, and had the use of said Weeks' mill, and owned timber lots in Victory from which he wished to take the timber for the purpose of manufacturing it at said Weeks' mill.  To that end, early in the fall of 1880, he let to one Emerson the job of cutting all the timber from lots 1 and 10 into logs, and delivering them at said mill.  .  .  .

Soon afterwards, Emerson sub-let a part of his said job to one Adams, upon the terms that Adams should " skid " the lumber on the lots—that is, should cut down the trees, limb them out, cut them into logs and deliver them upon skidways on the lower side of the lots at $2 per M.  Emerson informed Hazen of the arrangement he had made with Adams, and authorized Hazen to make payments to Adams, in money and supplies, from time to time ; but at no time to exceed $2 per M. for the lumber actually skidded.  Adams entered upon the performance of his job, and from time to time Hazen paid him in money and supplies the sum of $934.54 in accordance with Emerson's directions as above stated.

On the 20th day of October, 1880, Adams engaged said Kingsborough to work for him as head chopper in getting out said lumber.  Kingsborough thereupon· entered upon the work and continued to work faithfully for Adams upon his said job until Saturday night, the 19th day of February, 1881, when he ceased working for Adams because Adams did not pay him for his work.  About the same time that Adams engaged Kingsborough, five other men, acquaintances of Kingsborough, were also engaged by Adams for the same kind of work, and all worked with Kingsborough upon said job until February 19, 1881, when they all left for the same reason.

Adams agreed to pay Kingsborough $26 per month and his board for his work.  About February 19, 1881, Kingsborough and his fellow workmen heard that Adams had overdrawn his pay from Hazen, and they applied to Adams for their pay, and he re-

plied that he had no money but would give them orders on Hazen, and thereupon gave to each man an order for the sum his due according to the terms of hiring.

These orders were given February 21, 1881, and the men all quit work, and these orders were presented to Hazen, who refused to accept or pay them on the ground, as he said, that he had already overpaid Adams.

Kingsborough afterwards received something to apply on his wages, but the sum of $91.52, with interest from February 21, 1881, is still his due and has never been paid him on account of his wages; nor can anything be collected of Adams by reason of his poverty.

Hazen never promised to pay Kingsborough, nor became personally liable therefor, unless the law makes him so liable on the facts herein stated.

The other facts are sufficiently stated in the opinion of the court.

*Walter P. Smith*, for the defendant.

I submit that the law of 1878 (No. 53, p. 60), under which Kingsborough claims a lien upon the logs and lumber of the defendant for his services, gives the plaintiff (or Kingsborough) no remedy as against the defendant or the property attached.

There was no privity of contract between Hazen and Kingsborough, and the relation of debtor and creditor did not exist.

At common law a lien was deemed to be a *personal* right only. It created no right or property *in*, or right of action *to*, the property itself; but simply security to be created alone by the owner of the thing, or by his authority for the benefit of the man having the property in possession, for money or labor expended upon it at the request of the owner.

If the law of 1878 has no broader scope than chapter 108, it would be subverting the common-law principle to hold that such lien applied as well to *sub-contractors* and their *employees*, as to persons contracting with the *owner*, for services rendered or materials furnished.

In the case of *Greenough, Cook & Co.* v. *Nichols et al.*, 30 Vt. 768, the Supreme Court of this State has considered the lien law embraced in sec. 3 of chap. 108, and decided that the mechanics'

Quimby *v.* Hazen.

lien contemplated by the statute, is given only to those who contract with the *owner* of the building or have a claim against *him* for their labor, and not to workmen employed by contractors, and between whom and the owner there is no privity of contract.

The court in its opinion not only interpreted the statute in regard to builders' liens, but indicated the impotency of it to carry enforcement beyond contract made between contracting parties, one of whom is the owner of the property.

In the case of *Jacobs* v. *Knapp*, 50 N. H. 71, the question was raised, and discussed by the court in its opinion, whether a lien law similar to the one in the Acts of 1878, should receive the same construction, and be limited the same as the lien laws with reference to laborers on vessels and buildings, worded very nearly like our own in chap. 108 ; and it was held that it should.

The law is unconstitutional. It authorizes the attachment of a man's property to satisfy contracts which he had no voice in making, and over which he could exercise no control. If it means what the counsel for the plaintiff will doubtless claim, every laborer, no matter by whom employed, or how many removes he may be from the original contractor, is entitled to this extraordinary remedy. If the owner of the logs is a good business man, and does not care to be swindled, he is compelled to be the book-keeper, time-keeper and cashier, not only for his contractor, but the sub-contractor to any extent to which these " hewers of wood " may elect to divide up their jobs and parcel out their work. The law has no force, because it allows a man's property to be seized and sold without notice, hearing or inquiry. *Reddington* v. *Frye*, 43 Me. 587 ; 27 Me. 479 ; 56 Me. 298 ; 50 N. H. 71, 82.

*Elisha May*, for the plaintiff.

While the attachment was in force the defendant converted the logs ; he is therefore liable for nominal damages. 52 Vt. 17. The statute gives the lien to the person who " labors at cutting," &c. 52 Vt. 144 ; 8 Rep. 156. In New York, the Court of Appeals held that the supervising architect had such lien. *Stykes* v. *Cassidy*, 32 Am. R. 262. No class of persons can claim any lien

unless the statute expressly and in terms gives it. Phillips Mechanics' Lien, ss. 35, 41, 47, 48, 52, 79, 155. The Michigan Sup. Court recently gave a good definition of the words 'personal services.' *Brockway* v. *Jones*, 33 Am. R. 348 ; s. c. 39 ; *Whittaker* v. *Smith*, 81 N. C. 340 ; Phillips Mechanics' Lien, s. 157 ; 52 Miss. 271, 799, 813 ; 51 Ill. 422 ; 75 Ill. 385. The U. S. Supreme Court, in a recent case, held that the statutory law as to liens was the same as the common law, except as to possession. *Beal* v. *White*, 94 U. S. 382 ; *Deming* v. *Society*, 13 Gray, 414 ; *Hack* v. *Gaylord*, 50 Texas, 578 ; *Winder* v. *Caldwell*, 14 How. 441 ; *Duncan* v. *Bateman*, 23 Ark. 327 ; *Purinton* v. *Hull of Ship*, 2 Curtis Cir. Court Rep. 416. The law is constitutional. The Maine statute is similar to ours ; and has been held good by the Supreme Court of that State. 66 Me. 54, 57, 58 ; 2 Curtis, C. C. 416 ; 33 Me. 283 ; 34 Me. 286 ; 71 Me. 113. A like construction has been given to similar acts in Wis., Mich., and Minn., 32 Wis. 54 ; 35 Wis. 111 ; 39 Wis. 266 ; 49 Wis. 169 ; 45 Mich. 505.

The opinion of the court was delivered by

POWERS, J.   In the fall of 1880 the defendant let to one Emerson, the job of cutting the timber on certain lots in Victory, into logs, and hauling the same to the Weeks mill, to be manufactured by the defendant into lumber.   Emerson soon after sub-let a part of his job to one Adams, whereby Adams was to cut the timber into logs and deliver the same upon skidways at the lower side of the lots.   The defendant was notified of this arrangement with Adams.   Adams employed one Kingsborough and five others, as choppers, to cut the logs he had agreed to cut for said Emerson, who worked at this service from October 20, 1880 to February 19, 1881, when they quit the work for the alleged reason that Adams failed to pay them their wages.   The case does not show whether the defendant had any knowledge of Adams's contract with Kingsborough and his associates.

On the 9th day of March, 1881, Kingsborough filed in the town clerk's office in Victory his claim of a lien upon the logs cut by him and his associates, and on the 14th of April following he

caused the logs to be attached to perfect his lien under the statute. All the logs cut by Kingsborough and associates were drawn during the fall and winter to said mill, and intermingled by the defendant's procurement with other logs drawn there by other parties ; but of the Kingsborough logs so intermingled, 16 marked " H. E." and worth $28.05, and 77 other logs cut on the Bank lot by Kingsborough, worth $134.75, were identified as the Kingsborough logs. The rest of the 200,000 feet cut by Kingsborough could not be identified. The proceedings of Kingsborough in fixing his lien, making his attachment of the logs, and obtaining in due course his judgment against Adams, were regular and in accordance with the statute.

The defendant converted to his own use the logs drawn as aforesaid to the Weeks mill, and this plaintiff, who was the officer making the attachment in Kingsborough's suit against Adams, brings this suit to recover damages for such conversion. This plaintiff then stands upon Kingsborough's title.

It is insisted by the defendant that the statute (No. 53, Acts 1878) under which Kingsborough claims a lien upon the logs in question is unconstitutional, on the ground that it makes no provision for notice to the owner of the logs, and gives him no opportunity to be heard in court, either in respect to the amount of the lienholder's claim, or, his right to take the owner's logs. The statute is as follows :

" Sec. 1. Any person who labors at cutting or drawing logs shall have a lien thereon for his personal services, which lien shall take precedence of all other claims except liens on account of public taxes, to continue sixty days after the services are performed, and may be secured by attachment.

Sec. 2. The person claiming such lien shall file in the town clerk's office of the town where he performs such service . . . . a brief statement of the contract under which he claims a lien, which statement shall contain a declaration of his purpose to enforce his said claim against said property for unpaid balance that may be due for such service."

Other sections provide in substance that to make such lien available against subsequent purchasers, the claimant of the lien shall bring his suit and attach such logs therein within thirty days

after his debt matures, and further provide that unless the claimant bring his suit and attach the logs within sixty days after his debt matures, against the party for whom he performed such service, his lien shall be vacated.

The lien accorded under this act belongs to a class known as statutory liens, as distinguished from certain well-known liens existing at common law. The common law recognized the right of inn-keepers, carriers and certain artisans and mechanics to hold a lien upon property delivered to them for their charges. Inn-keepers and carriers had such lien upon the theory that they were bound to serve all persons who required their services ; and artisans upon the theory that by their labor and skill the specific property bailed to them had been increased in value. In both cases, to make the lien operative, it is necessary that the lien-holder keep the actual possession of the property to which the lien attached. Statutory liens, like the one in question, are analogous to the latter class of common-law liens named above, but unlike them, no possession of the property is required. The protection afforded at common law, by possession, is, in the case of statutory liens, accomplished through an attachment of the property.

The first question that presents itself for examination is, who, under the statute in question, is entitled to assert a lien upon the logs ? Under the statutes giving to mechanics and material men a lien upon buildings, it has been held that the right to such lien does not extend to sub-contractors ; but is limited to those persons who contract with the owner. *Greenough* v. *Nichols*, 30 Vt. 768. The defendant argues that the statute in question is to have a like construction, and cited the case of *Jacobs* v. *Knapp*, 50 N. H. 71, as an authority sustaining this claim. The case of *Jacobs* v. *Knapp* arose under a statute almost identical in language with our statute, and although the case is well reasoned, we are unable to adopt the reasoning upon this point as decisive of the question under consideration. On the contrary, we think that the language of the statute, read in view of the mischief sought to be remedied, gives the lien to such persons as actually cut or haul the logs. The statute belongs to a class of legislation, common to all the states of the Union, which is designed primarily to protect em-

employees against the crafty arts and wiles of employers. The language is " any person who labors *at* cutting," &c. Neither Adams nor Emerson labored *at* cutting the logs ; they merely employed the persons who labored *at* cutting, &c. They have no rightful claim to this lien; their bone and muscle, have added nothing to the value of the timber ; and this condition, as we have seen, is the very theory upon which this class of liens is given. *Doe* v. *Monson*, 33 Me. 430 ; *Oliver* v. *Woodman*, 66 Me. 54.

The lien then being one in this case that Kingsborough and his fellow workmen could assert, it remains to inquire whether the statute has deprived the defendant, as owner of the logs, of any right that belongs to him. It will be noticed that the person claiming the lien is required to file in the town clerk's office a brief statement of the contract under which he claims a lien, and he is required to bring his suit within sixty days against the party *for whom* he performed the work. In this case the " statement " would describe the *contract* with Adams, and the suit would be brought *against* Adams. The claimant has made no contract with the defendant ; and has no cause of action against him for his services upon which to bring suit. Nevertheless, under the act the claimant may seize and sell the defendant's property to satisfy Adams's debt, without notice to the defendant, and without any judicial inquiry to which the defendant is or can be made a party. As between the employee and his immediate employer the act is capable of enforcement. But any remove from this relation operates to take the property of one man to pay the debt of another without notice or opportunity to be heard. For this reason, in such cases, the Act is invalid.

The principle, that no man shall be deprived of his liberty or property, except by the " law of the land," or its synonym, " due process of law," is older than written constitutions, older even than Runnymede ; and breathes so palpably the spirit of exact justice, that it needs no formulation in the organic law. This principle is, however, in one form of expression or another, incorporated into the Federal Constitution, as well as those of the several States.

The best definition of the phrase " law of the land " that has ever been given, was that of Mr. Webster, in his argument in the celebrated Dartmouth College case. He says it is the law " which *hears* before it *condemns*, which proceeds upon *inquiry*, and renders *judgment* only after *trial*. Everything which may pass under the *form* of an enactment, is not therefore to be considered the law of the land." Judge COOLEY, in his Constitutional Limitations, and Sedgwick, in his Constitutional Law, both confess their inability to better this definition. The essence of this terse and comprehensive definition is, that no man's property can be taken from him, unless the owner has notice of the claim made upon it, and an opportunity to be heard in his defence to such claim. Says Judge STORY in *Wilkinson* v. *Leland*, 2 Peters, 627 : " We know of no case in which a legislative act to transfer the property of A to B without his consent, has ever been held a constitutional exercise of legislative power, in any State of the Union." And Judge CURTIS, in *Webster* v. *Cooper*, 14 How. 488, speaking of that clause in the constitution of the State of Maine which secures to every citizen the right of " acquiring, possessing and enjoying property," (which is substantially the phraseology of Article I. of our Bill of Rights) says : " that by the true intent and meaning of this section, property cannot, by a mere act of the legislature, be taken from one man and vested in another directly ; nor can it, by the retrospective operation of law, be indirectly transferred from one to another, or be subjected to the government of principles in a court of justice, which must necessarily produce that effect." And the Supreme Court of Michigan, in *Ames* v. *Port Huron Log Driving Co.*, 11 Mich. 147, says : " It is an inflexible principle of constitutional right, that no person can legally be devested of his property without remuneration, or against his will, unless he is allowed a hearing before an impartial tribunal, where he may contest the claim set up against him, and be allowed to meet it on the law and facts."

The Act in question in effect transfers the property of the defendant to Kingsborough without giving the defendant any opportunity to inquire whether Kingsborough has a debt against Adams, or any claim on the property seized—and without any

opportunity to meet Kingsborough's claim on the "law and facts." It indirectly, at least, transfers the property of A to B, or subjects it "to the government of principles in a court of justice, which must necessarily produce that effect."

In the case of common-law liens, the lien-holder may retain possession of the property bailed to him; but he cannot convert the same to his own use; nor sell it in satisfaction of his claim, without instituting proceedings of some sort in which the owner may be heard. 2 Chit. on Con. (11th ed.) 803; 2 Kent, (11th ed.) 855; *Sullivan* v. *Park*, 33 Me. 438.

In statutory liens the process of attachment within the limited time merely takes the place of the possession required at common law. The further right to sell the property, is, under the Act in question, exercised without notice to the owner.

It is claimed that the statute can be upheld on the ground that it is a proceeding *in rem*, and that the *res* may be condemned even though the owner have no notice. It is true that the procedure provided by the statute embodies some of the elements of proceedings *in rem*. So far as the employer's rights are involved, the statute contemplates a judgment *in personam;* so far as the rights of the true owner of the logs are involved, it resembles proceedings *in rem*. But in proceedings *in rem*, it is an universal principle that notice to all concerned, either personal, or by publication or proclamation, must be given in order to give the court jurisdiction to render judgment. *Nations* v. *Johnson*, 24 How. 204; Cooley Con. Limitations, 403.

The precise question involved in this case was before the court in *Jacobs* v. *Knapp*, *supra;* and the court declared the Act in question unconstitutional. Says FOSTER, J., speaking of the claim made in that case, that the lien was given to sub-contractors, without provision for notice to the owner of the logs: "It is entirely subversive of the fundamental principle of all free governments, that no person can be deprived of, or prejudiced in, his property or rights by the judgment of any court, unless he has notice of such proceedings and an opportunity to defend. That notice and that opportunity is not accorded by any provision of the law, and is not afforded by any such process or practice as is adopted in

the present case." In 1848 a similar statute was passed in Maine, and like ours, contained no provision for notice to the owner of the logs. But in 1855 the statute was amended by providing that the owner should have notice of the claimed lien and an opportunity to come into court and be heard. CUTTING, J., in *Redington* v. *Frye,* 43 Me. 587, speaking of the amendment of 1855, says: " that before the statute of 1855 it may be questionable how far a party had the constitutional privilege of seizing and confiscating the property of another, in violation of private rights, without an opportunity to be heard."

It may be true that *dicta* can be found in some of the cases that would seem to uphold this kind of legislation. But the general drift of authority is clearly the other way ; and we think, as between a sub-contractor and the owner of the logs, the Act in question is unconstitutional, inasmuch as it condemns without hearing, and adjudges without trial.

This view of the case renders it unnecessary to consider the other questions discussed in argument.

The *pro forma* judgment of the County Court is reversed, and judgment is rendered on the report for the defendant.