## BURGESS SULPHITE FIBRE CO. et al. v. DREW et al.

(Circuit Court of Appeals, First Circuit. November 21, 1907.)

### No. 687.

TRIAL—STATE STATUTES AS EVIDENCE—PRESENTATION TO JURY.

Plaintiffs, claiming a lien thereon for wages under the statutes of Vermont, and also a general indebtedness, attached certain logs and pulp wood in the possession of a contractor, who had agreed to sell and deliver the same to defendants in New Hampshire, and had given them a mortgage thereon. Pursuant to some agreement made between one of the plaintiffs and one of the defendants, plaintiffs released the attachment, and the property was delivered to defendants. Having obtained a judgment against the contractor, plaintiffs demanded payment of the same from defendants, and, being refused, brought suit in a federal court, alleging that defendants had promised to pay such judgment when the attachments were released. This was denied by defendants, who claimed· that their agreement was to account for the logs in case plaintiffs established a lien thereon. The only witnesses upon the issue were the two persons between whom the agreement was made, who contradicted each other. Under the laws of Vermont, defendants would have had the right to contest the validity of plaintiff's lien. *Held,* that such laws were material as bearing upon the disputed question of fact as to the actual agreement made, and that it was error for the court to refuse defendant's request to present them to the jury in its charge.

In Error to the Circuit Court of the United States for the District of New Hampshire.

Orville D. Baker (Daniel J. Daley and Herbert I. Goss, on the brief), for plaintiffs in error.

Thomas F. Johnson, for defendants in error.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. Throughout this opinion we will speak of the plaintiffs below, now the defendants in error, as the plaintiffs, and of the defendants below, now the plaintiffs in error, as the defendants. There was a verdict for the plaintiffs, and judgment thereon; and the defendants took out this writ of error. It should be observed that Burgess, one of the defendants, who represented the other defendant, has been treated in the record as standing for both defendants; so that where his name is used it is to be accepted as meaning both himself and the corporation which he represented, and vice versa. The facts, as stated from the standpoint of the plaintiffs, are as follows:

"In 1900, one E. C. Goodhue had contracted to sell and deliver to one of the defendants, the Burgess Sulphite Fibre Company, a large quantity of pulp wood from the towns of Canaan and Averill, Vt. This pulp wood had been hauled and landed on the Willard stream, a tributary of the Connecticut river in Vermont, and was to be run down Willard stream into the Connecticut river,

and finally delivered to the Burgess Company in Berlin, N. H. The plaintiffs had furnished Goodhue labor and supplies for his operations in cutting and hauling this wood to the amount of nearly $3,000, which he had failed to pay. When the spring freshets came on, and the parties had begun to run the wood down Willard stream into the Connecticut river, the plaintiffs brought suit against Goodhue; attached this wood on Willard stream, and the attaching sheriff threw a boom across the stream, stopped the wood by actual manual seizure, and held it completely within his control. Copies of the writ and sheriff's returns were also immediately filed in the offices of the town clerks in the towns where the wood was held. A few hours after this attachment and seizure of the wood, Mr. Burgess, one of the defendants and mortgagee of the wood, called up one of the plaintiffs by telephone, and told him if they would let the wood go they (the defendants) would pay the plaintiffs' claim for the supplies and labor furnished Goodhue, as soon as the sum due was ascertained or agreed upon. Relying on this promise and agreement, plaintiffs told the keeper to open the boom and let the wood go, which was done; and they also directed the sheriff to release the attachment. The suit against Goodhue was contested, but judgment for plaintiffs was obtained for the full amount claimed. Defendants were afterwards notified of the judgment, and payment was demanded. Payment not being made, this suit was brought against the defendants on their alleged contract."

The facts as given by the defendant do not materially differ except on the question of the nature of the promise given the plaintiffs on which the present suit was brought. The attachment was made generally, and also particularly for the purpose of enforcing an alleged lien under the statutes of Vermont on the property attached. The defendants maintain that the only promise given was what was testified to by Burgess, to the effect that, if Warren E. Drew, one of the plaintiffs, would bring a lien receipt to Berlin, he (Burgess) would sign it if he (Drew) would release the pulp wood. This was over the telephone. As to the nature of the promise the parties were squarely at issue, and this issue turned on the testimony of Warren E. Drew and Burgess as to this conversation over the telephone, without either having any direct support from other proofs as to what was the true version.

There is no question that, immediately after the conversion between Burgess and Drew, the attaching officer released possession of the logs, and that they floated into New Hampshire, and came into the hands of the defendants, and were disposed of by them.

The writ against Goodhue contained the following directions:

"And you are also further commanded to attach all the logs, timber, and pulp wood now in Willard stream in the towns of Canaan and Lemington in said county of Essex, in order to preserve and secure the plaintiffs' lien thereon for the indebtedness set forth in the writ of services in hauling and driving said lumber, timber, and pulp wood."

There seems to be no substantial question on the proposition that the deputy sheriff made the proper returns to the various officers of the town clerks in the towns in which were situated the property attached, in accordance with the statutes of Vermont in regard to effectuating liens; and the same is true on the proposition that those returns, together with the order of the writ which we have quoted, were in due form to effectuate a lien under those laws. All these facts are to be kept in mind in considering the defendants' assignment of alleged errors.

Immediately after the logs were released, or perhaps so near thereto that the occurrence might be said to have been simultaneous therewith, a receipt was given to the deputy sheriff by the defendants as follows:

"Canaan, Vermont, June 2nd, 1900.

"Received from Carlisle N. Green, deputy sheriff of Essex County, Vermont, about 1,000 cords of pulp wood of the value of six thousand dollars which was attached by said Carlisle N. Green, on a writ in favor of W. E. and J. W. Drew, to enforce and preserve their lien for labor in hauling and driving said logs and pulp wood, which logs and pulp wood we hereby agree to account for to said sheriff to answer any execution which the said plaintiff may recover in their said suit.          Burgess Sulphite Fibre Co.,

"By T. P. Burgess, Treas."

There is, apparently, no substantial question that, in Vermont, in a suit brought on this receipt, the receiptor might have shown that the plaintiffs had no lien claim, or that the lien claim was subject to the mortgage, if there was one; so that, in a suit on the receipt, the plaintiffs might have recovered nothing, or perhaps a portion of their debt only pro tanto, according to the facts as they actually existed. Therefore, there may be a broad distinction between the promise alleged by the plaintiffs to have been made by Burgess and a promise to give a receipt; so that the question whether, under the laws of Vermont, the plaintiffs had an absolute lien on the property attached as against an alleged mortgage, or no lien at all, was an essential element in determining the probabilities whether the defendants agreed absolutely to pay the debt due the plaintiffs from Goodhue, or only promised to give a receipt which would secure to them possession of the logs, and postpone all substantial questions for future determination. Therefore, the relations of the laws of Vermont to the existing circumstances constituted an important element in enabling the jury to ascertain what the probabilities were in regard to the conflicting versions of the conversation between Drew and Burgess.

The statute giving liens of the class involved here is found in section 2282 and sequence of the Vermont Statutes 1894, of which section 2282 is as follows:

"Sec. 2282. A person cutting or drawing logs shall have a lien thereon for his wages which shall take precedence of other claims except public taxes, and continue sixty days, after the services are performed. Such lien shall not attach until the person claiming it files in the office of the clerk of the town where he performed the services, or if the town is not organized, in the county clerk's office, a brief statement of the contract under which he claims a lien, and his purpose to enforce it against the property for the amount due for such service."

The plaintiffs' claim against Goodhue did not arise out of any cutting or drawing of logs, but it was for supplies furnished him in carrying on his operations. Therefore, the plaintiffs do not seem to have been within the description of the persons to whom the lien statute relates, or to have had any claim for wages, which are apparently the only thing protected. Quimby v. Hazen, 54 Vt. 132, 138, 139. Also, it is apparently conceded that no lien under the laws of Vermont would take priority over defendants' mortgage, if they had one. The defendants called a witness to prove the law in these respects, which was re-

jected, and properly so, as the federal courts are assumed to know the laws of all the states.

In some respects the positions taken by the defendants in relation to the various topics as to the alleged liens on the logs were so confused and inconsistent as to tend to mislead the court, and to prevent it from understanding on what propositions they wished to rest. Nevertheless, on going through the record carefully, we are satisfied that, for the reasons we have stated, as bearing on the probabilities as to what sort of a contract the parties would have been the more likely to have made for the purpose of securing a release of the logs, the defendants were entitled to have the various propositions as to the laws of Vermont, to which we have referred, clearly and fully sifted out and explained to the jury; that the defendants ultimately requested such explanations; that they failed to obtain them; that they duly excepted in reference thereto; that the lack of such explanations was presumably detrimental to the defendants; that, notwithstanding the varying positions of the defendants, they ultimately worked out the substantial propositions which we have considered; and that, in consequence of all the same, the judgment and verdict must be set aside, and a new trial ordered.

With reference to the local statutory and common law of Vermont, we add that the various propositions which we have stated have not been so thoroughly discussed at bar that we venture to assert that our conclusions in reference thereto might not be changed on further consideration. Therefore, we do not intend that the Circuit Court shall absolutely accept those conclusions. We leave that court to sift out the local law as it should be sifted out, notwithstanding the observations which we have made. On this topic our only decisive holding is that the defendants were entitled to the explanations for which they asked.

The defendants assign and have brought to our attention various other alleged errors. Among the rest is the proposition that, when money is exacted from a person by virtue of the unlawful retention of his goods, the money cannot be retained by whosoever received it. The defendants have elaborated this, and have cited numerous authorities. Of course, there are various aspects of this topic, some of which require that there should have been a protest, others that the person having possession of the goods should have means of knowledge, or even know, that he is a tort-feasor, and others which eliminate every transaction which bears the aspect of a fair compromise, or of accord and satisfaction. It is unnecessary to go through the cases cited on this topic, which has been summed up by so authoritative a work as Perkins' 11th Edition of Chitty's Law of Contracts, vol. 2, 941, as follows:

"It is likewise an undoubted proposition, that, if goods be wrongfully taken or retained, and a sum of money be paid, merely for the purpose of obtaining possession thereof, especially if it be paid under protest, such money can be recovered back, not on the ground of duress, but simply because the payment thereof was not voluntary."

It is to be noted that the rule applies only where the person receiving the money has wrongfully taken or detained the goods, and the

money is paid merely for the purpose of obtaining possession. Therefore, it is plain that the whole topic is inapplicable here, because, at the time the promise on which this suit was brought was made, neither the plaintiffs nor the deputy sheriff were tort-feasors. Whatever might have been the fact if the defendants as mortgagees, if they were such, had demanded possesssion from the deputy sheriff, and he had refused to surrender the property, the situation when the conversation between Burgess and Drew occurred was simply that the deputy sheriff had lawfully attached the logs as belonging to Goodhue, no mortgagee had intervened, the claim in suit was an honest one, and the right to attach, even if there was no lien, was also clear until, at least, a mortgagee made a demand on the deputy sheriff or the plaintiffs; so that the fundamental element on which the defendants most rely disappears. Moreover, the transaction has the aspect of a fair arrangement throughout, and not that of an agreement to pay money forced by a wrongdoer.

We will touch only very briefly on what remains, observing at the outset that we see no error in the case except what we have already pointed out. The defendants make the point that the fact that the attaching officer was a deputy sheriff could have been proven only by the record, which is true; but the attempt to prove that fact strictly was withdrawn, and the witness, who was the alleged deputy, was allowed to prove that he was acting as such. This is not only within the settled practice, but there was, in fact, no real dispute that he was what he assumed to be, so that the whole topic was without detriment. Thus, also, the question whether it was proper for the plaintiffs to prove by oral testimony that an attachment was made in the manner which we have described was absolutely trivial, because the record evidence of the attachment is in the case. Likewise as to the exception with reference to the admission of evidence to prove that there was no dispute between the plaintiffs and Goodhue about the amount of the claim; as to the proposition that oral testimony was not admissible to prove that the attachment had been discharged; as to the objection made to the plaintiffs' reading from the statutes of Vermont the provisions regarding attachments of personal property subject to mortgages; and as to the exception to the ruling that, under the laws of Vermont, it was necessary for an officer, in order to make an effectual attachment of logs, to take possession of them. The officer did take possession of the logs in the manner described by the plaintiffs, so that whether or not it was necessary for him to take possession was unimportant. He released the logs, as we have said, and they floated beyond the jurisdiction of the state of Vermont, so that what was the technical way under the statutes of Vermont of formally discharging an attachment was also unimportant; and all the topics to which we thus refer were either unimportant on the real issue in the case, or so thoroughly established by record evidence that the oral proofs could not have been detrimental.

To sum up all we have said, we are not impressed with the fact that there is any error in the record, substantial or otherwise, except the failure to make clear to the jury the laws of Vermont relating to liens, and the application of those laws to the case on trial. We are sure

there is no other substantial error; but the one pointed out is sufficient to entitle the defendants to prevail before us.

The judgment and verdict are set aside; the case is remanded to the Circuit Court for further proceedings consistent with our opinion passed down this day; and the appellants recover their costs of appeal.